IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CORLIVEETHO MCMILLIAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-1529 |
| | ) | Judge Nora Barry Fischer |
| v. | ) | Chief Magistrate Judge Maureen P. |
| | ) | Kelly |
| JOHN E. WETZEL, *Secretary of Corrections*; | ) | |
| JEFFREY WITHERITE, *Western Region Staff* | ) | Re: ECF No. 98 |
| *Assistant of Department of Corrections*; | ) | |
| SUPERINTENDANT BRIAN COLEMAN; | ) | |
| SECURITY CAPTAIN WEAVER; UNIT | ) | |
| MANAGER STEPHEN BOZAS; CO I OFFICER | ) | |
| CARNS; CO I OFFICER PALMER; and | ) | |
| PRISONER WILLIAM KULP; | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Corliveetho McMillian ("Plaintiff") is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), currently incarcerated at the State Correctional Institution ("SCI")-Camp Hill. Plaintiff was incarcerated at SCI-Fayette at the time of events that give rise to this action, and prior to that, was incarcerated at SCI-Dallas. Plaintiff brings suit pursuant to 42 U.S.C. § 1983 against various corrections officers ("CO") and DOC personnel, including DOC Secretary John E. Wetzel ("Wetzel"), Western Region Staff Assistant Jeffrey Witherite ("Witherite"), Superintendent Brian Coleman ("Coleman"), Security Captain Weaver ("Weaver"), Unit Manager Stephen Bozas ("Bozas"), CO Carns, and CO Palmer ("Defendants"). Plaintiff has also a fellow inmate at SCI-Fayette, William Kulp.[1] Before the Court is a Motion for Summary Judgment ("the Motion") filed by Defendants. ECF No. 98. For the reasons that

---

[1] Defendant Kulp did not respond to the complaint, by answer or otherwise, and on August 24, 2015, the Clerk of Court entered default against him. ECF No. 64.

follow, it is respectfully recommended that the Motion be granted.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2013, Plaintiff was being placed in a recreation cage in the prison yard when Kulp, who was in the cage next door, splashed "feces-like" liquid on Plaintiff's face and head. Plaintiff alleges that CO Carns and CO Palmer conspired with Kulp to throw the substance on Plaintiff to retaliate against him for filing civil complaints and grievances – in particular, a lawsuit against a corrections officer at SCI-Dallas. Plaintiff claims that on the morning of January 26, 2013, prior to "yard," he observed CO Carns and CO Palmer approach Kulp, whose cell was next door to Plaintiff. ECF No. 48 ¶ 13. Plaintiff allegedly heard CO Carns tell Kulp to strip down so that he could be taken to the yard. Id. "[S]econds later," he heard Kulp say "yeah." Id. Then, he heard CO Carns say, "I didn't see nothing," and Palmer say, "Yeah, yeah. I was looking at T.V. I didn't see nothing either." Id. Following that exchange, Kulp was taken to the yard and placed in a recreation cage, and Plaintiff was removed from his cell and placed in the cage next to Kulp's. Id. The alleged assault with the liquid took place as Plaintiff was being placed in the cage. Id. Following the incident, Plaintiff was escorted to the shower and seen by a nurse, while Kulp was being strip searched and issued a misconduct. ECF No. 101-3 at 7, 24.

In response to the instant Motion, Plaintiff submitted an affidavit signed by fellow inmate Jamel Brockington. ECF No. 104-5 at 2-4. According to the affidavit, Kulp told Brockington that the guards paid him with cigarettes to throw the substance on Plaintiff. Id. Kulp also allegedly told Brockington that the assault "was done because [Plaintiff] got the guards on his top for assaulting a CO at another jail." Id. at 4.

In addition to the incident on January 26, 2013, Plaintiff describes in the second

2

Amended Complaint a series of events dating back to February 2012, when he was moved from "d-block to L-block" and "placed in the [Special Management Unit]," that he believes constituted a "'continuing violation' . . . for filing a lawsuit against the guards of SCI-Dallas . . . and exercising [his] First Amend[ment] right, the right to redress the government, and filing complaints to the Secretary of Corrections, John E. Wetzel, and grievances about the ongoing retaliation and abuse." ECF No. 48 ¶ 48. As an example of the alleged retaliation, Plaintiff claims that sometime after his transfer to SCI-Fayette, Bozas "discriminated against him, unlike all other similarly situated inmates in the level 5 security housing unit," by having a sign placed on the outside of his cell door, which "stated in big bold letters that Plaintiff had a lawsuit against SCI-Dallas[.]" Id. ¶ 49. He claims that he asked to have the sign removed, but Bozas refused. Id. ¶ 50. Plaintiff also claims that CO Carns started giving his mail to other inmates and threatening that he would withhold his mail and intercept any grievances he tried to file. Id. ¶ 51. Moreover, Plaintiff claims that on July 3, 2012, he "notified Deputy Armell about the tampering of [his] mail," and Armell told him that he would notify Bozas; however, the problem allegedly persisted. Id. ¶ 52. As evidence of the retaliatory nature of this conduct, Plaintiff claims that on an unspecified date, "while [he was] going to the program review committee," he overheard Bozas tell CO Carns and CO Palmer "to keep the pressure on [him], that way, he will think twice before he file[s] anymore lawsuits. This is what we do to these [n-words] when they get out of hand with filing these lawsuits against our people." Id. ¶ 53.

On July 23, 2012, Plaintiff wrote a letter to Defendant Wetzel complaining that he had blood in his stool, that his food tasted like chemicals, and that he had not been receiving medical attention. ECF No. 104-9 at 13. He claimed that "the retaliation and abuse started right after [he] received a pacemaker from Wilkes-Barre General Hospital in . . . April 2010, and during the

surgery [his] lungs and liver were damaged." Id. He explained that he had requested medical records related to the surgery, but they were never provided to him because they were stolen "by someone in the administration." Id. Witherite responded to Plaintiff in a letter dated July 31, 2012, explaining that he had reviewed Plaintiff's complaints and determined that "the majority of [Plaintiff's] issues [took] place at other facilities." Id. at 2. In any event, Witherite wrote, he would notify Coleman and Weaver about his concerns, and they would have to determine whether further action was warranted. Id. Plaintiff sent additional letters to Witherite and Wetzel on December 3, 2012, and December 4, 2012, respectively, complaining that since he had been incarcerated at SCI-Fayette, he had "been threatened [with] bod[ily] harm, [his] food ha[d] been tainted with something and [he] still ha[d] blood in [his] stool. [His] mail was and is still being tampered with in an attempt to intimidate [him] from going on with the civil complaint." ECF No. 104-9 at 10. Witherite sent Plaintiff a response on December 10, 2012, notifying him that the appropriate personnel had again been notified of his concerns. ECF No. 104-9 at 3. "In regards to [Plaintiff's] grievances," Witherite noted "that a majority of them have been rejected due to various reasons[;] they are not being ignored." Id.

Plaintiff claims, however, that "these officials ignored [his] complaint" and "fail[ed] to follow through to stop or correct the wrongful act of abuse against [him]." ECF No. 48 ¶ 59. For example, he claims that sometime after he sent the letters, he requested paper and carbon and postage "to respond to the courts concerning [his] civil complaint [against] SCI-Dallas guards[,]" and he was given "a ripped open envelope with four sheets of paper and no carbon." Id. ¶ 61. Moreover, "seventeen days after Witherite's response . . . is when the malicious attack happened," during which Kulp splattered the "feces-like" liquid on Plaintiff. Id. ¶ 62.

In the instant case, Plaintiff filed a motion for leave to proceed *in forma pauperis* ("IFP")

on November 7, 2014, which the Court granted on December 16, 2014. ECF Nos. 1, 5. An amended complaint, which was dated December 12, 2014, was filed by the Clerk's Office on Plaintiff's behalf the next day. ECF Nos. 8. On April 24, 2015, Defendants file a partial motion to dismiss. ECF No. 36. In response, Plaintiff filed a second Amended Complaint on May 27, 2015. ECF No. 48. In the second Amended Complaint, which remains the operative pleading, Plaintiff alleges that Wetzel, Witherite, Coleman, and Weaver violated his Eighth Amendment right to be free from cruel and unusual punishment "when [they] acted with deliberate indifference and failure to protect, when [they] acquiesced and refused to stop or correct a wrongful act after being notified of continuing harmful, ongoing retaliation against Plaintiff." ECF No. 48 ¶¶ 10-13, 27-28. Plaintiff alleges that CO Carns and CO Palmer conspired with Kulp to retaliate against him for filing "civil complaints and grievances." Id. ¶¶ 29-30. Finally, Plaintiff alleges that Bozas violated his Eighth Amendment and Fourteenth Amendment "due process and equal protection" rights "when he acted with deliberate indifference, discriminating against Plaintiff, and failure to protect, when he acquiesced and refused to stop or correct a wrongful act after being notified of the wrongful act of 'continuing violation' of harmful ongoing retaliation against Plaintiff." Id. ¶ 31.

Defendants filed their Motion for Summary Judgment, along with a brief and concise statement of material facts ("CSMF"), on August 12, 2016. ECF Nos. 98-101. Plaintiff filed a response in opposition and a counterstatement of material facts on October 19, 2016. ECF Nos. 104, 106. The Motion is ripe for disposition.

  B.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show

5

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(C). The moving party has the initial burden of proving the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations; instead, it is limited to deciding whether there are any disputed issues and, if so, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact is

"material" if its resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247–249.

C. DISCUSSION

Plaintiff asserts claims for First Amendment retaliation and Eighth Amendment failure to protect based on the incident involving Kulp on January 26, 2013.[2] He also apparently believes that this incident was part of an ongoing series of retaliatory conduct dating back to as early as February 2012. Defendants move for summary judgment as to each claim, arguing that (1) Plaintiff has not established that Coleman, Witherite, Weaver, Bozas, and Wetzel were personally involved in the alleged wrongdoing; (2) there is insufficient evidence to support a retaliation claim; and (3) there is insufficient evidence to establish a failure to protect claim. These arguments will be addressed below.

As an initial matter, however, the Court will address Defendants argument that Plaintiff's claim is time-barred insofar as it is based on incidents that predate the two-year limitations period. Defendants are correct. "In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citations omitted). "Pennsylvania's statute of limitations for person injury is two years." Id. Because Plaintiff filed his motion for IFP status on November 7, 2014, he can only recover for allegedly unlawful acts that occurred after November 7, 2012. See McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996) (explaining that a complaint is deemed "constructively filed as of the date that the clerk received the

---

[2] On the first page of the second Amended Complaint, Plaintiff generally identifies four claims: "due process and equal protection under the law," ethnic intimidation and discrimination," conspiracy to interfere with civil rights, and "failure to prevent the same wrongful act." ECF No. 48 at 1.

complaint—as long as the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to proceed *in forma pauperis*). Conversely, any claims that Plaintiff may have had for the alleged conduct dating back to February 2012 – *i.e.*, that which is described in paragraphs 48 through 56 of the second Amended Complaint – are time-barred.

While Plaintiff contends that all of these actions, taken together with the incident involving Kulp, amount to a "continuing violation" of his constitutional rights, he is misguided. Each alleged incident of retaliation was a discrete act that was individually actionable. See O'Connor v. City of Newark, 440 F.3d 125, 129 (3d Cir. 2006) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)); Hunt v. Pa. Dep't of Corr., 289 F. App'x 507, 509 (3d Cir. 2008). As such, each incident gave rise to a cause of action when it occurred, which "persisted for two years and then lapsed." O'Connor, 440 F.3d at 129. The discrete acts cannot be cobbled together in order to allow Plaintiff to raise claims that would otherwise be untimely. Thus, Plaintiff may only proceed with the claims arising within the limitations period: on or after November 17, 2012. Recognizing that all claims arising prior to November 17, 2012, are time-barred, the Court will turn to Defendants' remaining arguments.

### 1. Personal Involvement

Plaintiff makes various allegations against Coleman, Witherite, Weaver, Bozas, and Wetzel. In response, these Defendants argue that there is no evidence that their involvement rose to the level necessary to impose liability on them under Section 1983. This argument is well taken. "[W]hen a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an 'affirmative part' in the complained-of misconduct." Stokes v. Riskus, 2015 WL 1326200, at *3 (W.D. Pa. Mar. 24, 2015) (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)). In other words, "[a] defendant in a civil rights action must have personal

involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "To be personally involved, the supervisor must direct the actions of his supervisees, or know and acquiesce in the supervisee's actions." Blatt v. Pennsylvania Bd. of Prob. & Parole, 2014 WL 3845725, at *8 (W.D. Pa. Aug. 4, 2014) (citing Rode, 845 F.2d at 1207). By contrast, "a mere 'allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.'" Okey v. Strebig, 2012 WL 5439042, at *8 (M.D. Pa. Nov. 7, 2012) (quoting Greenwaldt v. Coughlin, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995)).

Plaintiff's allegations regarding Witherite, Wetzel, Coleman, and Weaver fall into the latter category. Plaintiff sent Witherite and Wetzel letters complaining about various instances of alleged retaliation, but, as set forth above, that is not enough to impose liability on them. The allegations regarding Coleman and Weaver are even sparser. While they were apparently notified by Witherite of Plaintiff's complaints, there is no evidence that they directed or acquiesced in the assault that took place on January 26, 2013. Plaintiff has also failed to specifically link Bozas to the January 26, 2013, incident. While Plaintiff claims that Bozas told CO Carns and CO Palmer to "put the pressure on" Plaintiff, but there is no evidence to link this statement to the incident involving Kulp, nor is there any evidence of temporal proximity.[3] Accordingly, even if Plaintiff

---

[3] Plaintiff makes reference to the Fourteenth Amendment due process and equal protection clauses in the paragraphs of the second Amended Complaint addressing Bozas's alleged use of the n-word and the placement of a sign about his lawsuit against the SCI-Dallas COs. To the extent that Plaintiff intended to assert an independent claim based on this conduct, any such claim would fail for various reasons. With respect to the alleged use of the n-word, although offensive, "[i]t has been held that the use of words, however violent, generally cannot constitute an assault actionable under § 1983." Todd v. Kyler, 2007 WL 61062, at *4 (M.D. Pa. Jan. 5, 2007). Moreover, the statement appears to have been made prior to the limitations period, and thus, any claim based on the statement is untimely. The same is true with respect to the alleged incident involving the sign that was placed on Plaintiff's cell door. For one thing, there is no evidence to support that this actually occurred, let alone evidence that Plaintiff was singled out

could establish an underlying violation of his constitutional rights, these Defendants would nonetheless be entitled to summary judgment.

### 2. Conspiracy to Commit Retaliation Claim

Plaintiff claims that CO Carns and CO Palmer conspired with Kulp to throw the "feces-like liquid" on him in retaliation for his filing civil complaints and grievances. Defendants argue that there is no evidence of a retaliatory conspiracy. On this point, the Court agrees.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). To prove a retaliation claim, a prisoner must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected; 2) he suffered adverse action at the hands of prison officials; and 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (internal citation and quotation marks omitted). Moreover, because CO Carns and CO Palmer are alleged to have conspired with Kulp to violate Plaintiff's constitutional rights, Plaintiff must come forward with evidence "from which a conspiratorial agreement" among them "can be inferred." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010).

Assuming that Plaintiff established that he engaged in constitutionally protected conduct and that the splattering of "feces-like" liquid on him amounted to an adverse action, there is no evidence that CO Carns and CO Palmer were responsible for this action or had any knowledge of Plaintiff's prior lawsuits and grievances. Aside from his own suspicions and suppositions, which are not enough to survive summary judgment, the single piece of evidence upon which Plaintiff

---

for an invidious or unlawful reason. In any event, the alleged incident took place outside the limitations period and is time-barred.

relies to support his conspiracy theory is the statement allegedly made by Kulp to his fellow inmate, Brockington, which is set forth in Brockington's affidavit. See ECF No. 104-5. However, Kulp's alleged statement to Brockington is inadmissible hearsay. Therefore, it "cannot be used to overcome summary judgment." Mincy v. Klem, 448 F. App'x 169, 172 n.2 (3d Cir. 2011) (refusing to consider an "affidavit from another inmate stating that [an inmate who had assaulted the plaintiff] had said, sometime after the attack, that he had been in league with the guards"); Fed. R. Civ. P. 56(c)(4) (explaining that an affidavit use to oppose a motion for summary judgment must, *inter alia*, "set out facts that would be admissible in evidence"). Plaintiff's reliance on the statement he allegedly overheard Bozas make to CO Carns and CO Palmer is equally unavailing because, as already explained, there is no evidence to link it to the January 26, 2013, incident involving Kulp. That is to say, standing alone, it is not enough to show that Kulp threw the "feces-like" liquid on Plaintiff as part of a conspiracy with CO Carns and CO Palmer "to keep the pressure on [Plaintiff]." Because Plaintiff has not adduced any admissible evidence to support his claim that CO Carns and CO Palmer conspired with Kulp to retaliate against him, summary judgment should be granted in their favor as to this claim.

### 3. Eighth Amendment Failure to Protect Claim

Plaintiff alleges that Wetzel, Witherite, Coleman, Weaver, and Bozas failed to protect him in violation of the Eighth Amendment. As the Court has already determined, Plaintiff has not brought forward sufficient evidence of personal involvement on the part of any of these Defendants, so any claim against them must fail. Even if there was evidence of personal involvement, Plaintiff's attempt to impose liability on these Defendants under the Eighth Amendment also fails. The Eighth Amendment requires a prison official to "take reasonable measures to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan,

11

511 U.S. 825, 833 (1994). "In order to succeed on a failure to protect claim under § 1983, an inmate must demonstrate that corrections officers acted with deliberate indifference to a substantial risk of serious harm." Nifas v. Coleman, 528 F. App'x 132, 135 (3d Cir. 2013) (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)). The knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol, 256 F.3d at 133.

Applied here, there is no evidence in the record that would suggest Kulp posed any threat to Plaintiff prior to the incident, such as a history of prior violent incidents or assaults. Cf. Hill v. Fisher, 2016 WL 950946, at *3 (M.D. Pa. Mar. 7, 2016) (denying summary judgment where inmate who assaulted plaintiff had a history of spitting and throwing feces and urine on other inmates). Furthermore, there is no evidence proffered of any knowledge or notice of such threat or history of such assaults. In fact, Defendants' response to the incident – they immediately allowed Plaintiff to shower and provided him with medical care – "militates against any suggestion" that they acted with deliberate indifference. Mincy, 448 F. App'x at 172 (citing Washington v. LaPorte Cnty. Sheriff's Dep't, 306 F.3d 515, 518-19 (7th Cir. 2002)). Accordingly, summary judgment should be granted as to Plaintiff's Eighth Amendment failure to protect claim.

### D.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment, ECF No. 98, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure

to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: February 10, 2017

cc: Corliveetho McMillian
AY-6916
SCI-Camp Hill
P.O. Box 200
Camp Hill, PA 17001

All counsel of record via CM/ECF